UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTES EXPRESS LINES,

    Plaintiff,

v.                                                                                              Case No: 8:19-cv-467-T-36AEP

COVERLEX, INC.,

    Defendant.

_____

**O R D E R**

This cause comes before the Court upon Plaintiff Estes Express Lines' ("Estes Express") Amended Motion for Entry of Default Final Judgment [Doc. 19]. The Court granted default judgment as to liability by order dated November 25, 2019. [Doc. 15]. In that order, the Court explained that "additional explanatory information [was] needed to prove the damages sought." *See id.* at 5-6. Estes Express now seeks to establish its damages. Having considered the Amended Motion and attached affidavit and being fully advised in the premises, the Court will deny the amended motion as it pertains to the establishment of damages.

    **I.**    **BACKGROUND**

This lawsuit arises from a business relationship which began in 2018, when Estes Express, a duly licensed and authorized motor carrier for hire, was contacted by Coverlex , Inc. ("Coverlex") about performing transportation services on behalf of Coverlex. [Doc. 1 at ¶ 5]. Estes Express issued a pricing agreement to Coverlex, which among other things provided shipping discounts and preferred pricing. *Id.* 1 at ¶¶ 6, 7; pp. 7-14. Unless otherwise provided in the Agreement, all shipments were "subject to the rules set forth in Item 1000 of the EXLA 668 Discount Tariff and the EXLA 105 Rules Tariff in effect at the time of shipment." *Id.* at ¶ 10; p. 14. Approximately

2,500 shipments of commercial goods were tendered to Estes Express by Coverlex pursuant to the Agreement. *Id.* at ¶ 12. Coverlex was invoiced for all amounts owed and accepted each of Estes Express' invoices and underlying paperwork without objection or protest. *Id.* at ¶ 18. Despite demand, Coverlex failed and refused to pay Estes Express' original invoices in the amount of $335,575.69.[1] *Id.* at ¶¶ 19-20. Accordingly, Estes Express removed all discounts from the invoices in accordance with Item 720 of EXLA Tariff 105 series and notified Coverlex of the discount forfeiture based on the failure to pay. *Id.* at ¶¶ 21, 22; p. 17. The total amount of the unpaid, undiscounted freight charges due and owing to Estes Express is $1,829,154.14.[2] *Id.* at ¶ 23. That amount consists of original freight charges of $335,575.69 plus lost discount charges of $1,493,578.45. Doc. 1 at ¶ 23.

On February 22, 2019, Estes Express filed a two-count complaint against Coverlex for breach of contract and *quantum meruit*. [Doc. 1]. A return of service [Doc. 8-1] was filed March 14, 2019, and a Clerk's default [Doc. 10] pursuant to Federal Rule of Civil Procedure 55(a) was entered shortly after. The Court has since entered default judgment as to liability. [Doc. 15]. However, the Court deferred ruling on damages because Estes Express had not satisfied its burden of proof as to damages. *Id.* at 4-6. Specifically, the Court noted that (i) none of the documents attached to the complaint state a total sum of $335,575.69; (ii) there was insufficient information about the lost discount charges; (iii) it did not appear that Estes Express had submitted line item

---

[1] Estes Express has noted that the total unpaid freight charges is actually $337,110.73. *See* Doc. 19-1 at p. 4 n.1.
[2] Estes Express has also corrected the total undiscounted freight charges to $1,833,322.01 and has noted that it will abide by the drafting error and accept judgment for the lesser amount. *See* Doc. 19-1 at p. 5 n.3.

2

charges totaling the claimed lost discount amount; and (iv) Estes Express had failed to elucidate how the shipping discounts were calculated and removed.[3] *See id.* at 5.

Estes Express attempts to address these issues in its amended motion for default judgment [Doc. 19]. There, it states that a supplemental affidavit has been provided "to clarify the disparity between the exhibit to the complaint and the original affidavit of indebtedness, which was simply the failure on the part of Estes [Express] to include the accessorial charges in its total damages, instead merely totaling the original freight charges, with the fuel surcharge, and loss of discount;" and to "prove[] up the debt that is owed to the Plaintiff in the principal sum of $1,829,646.64." *See id.* ¶¶ 11, 12. In her affidavit, Donna Ferguson—Credit Analyst in the Credit Risk Management Department at Estes Express—explains that Coverlex failed and refused to pay Estes Express' original invoices in the amount of $335,575. [Doc. 19-1 ¶¶ 19, 20, 78]. By failing to make timely payment of the amounts owing, Coverlex allegedly forfeited $1,493,578.45 in freight discounts, resulting in a total amount due of $1,829,154.14. *Id.* at ¶¶ 23, 24. Ferguson provides the pricing agreement which lists various discounts and minimum charges based on the origin and destination of the shipment; whether it was outbound prepaid, outbound collect, inbound collect, or third party;

---

[3] The Court had raised these same concerns—among others—in its first order denying default judgment stating as follows:

> Plaintiff's Complaint and affidavit do not provide the terms of the tariffs, do not include information about the shipments—for example, the destination, weight, or rate,—to determine how the $335,575.69 freight charges were calculated, and do not include sufficient information about how the discounts were calculated and removed, resulting in higher charges. Plaintiff merely concludes the amount due without providing sufficient factual material to prove the two main components of the total damages.

[Doc. 12 at 4].

and whether there were accessorial exceptions. *Id.* at 7-14. The discount forfeiture notice was also provided with the affidavit. It states:

> This is notification that your account with Estes Express Lines as shown below is past due.
>
> Failure to remit payment in full within 20 days will result in the addition of forfeited discount penalties and/or 30% penalty of undiscounted freight charges for the total amount due of $1,833,322.01 as allowed by tariff EXLA 105 series, items 720 and 720-50.

*Id.* at 17. The notice provides line item information for 2498 past due freight bills including freight bill date, reference number, and amount due. *Id.* at 17-69. The total past due amount is $337,110.73. *Id.* at 69. Ms. Ferguson also provides five sets of exemplar freight bills as exhibits and explains that each gave a breakdown of the charges for shipment including the total discounted and undiscounted amounts. *Id.* ¶¶ 13, 16. All five freight bills reflect a significant price increase when forfeited discounts are added; going from $119.66 to $572.69, from $202.44 to $1140.80, from $121.08 to $599.73, from $106.08 to $625.63, and from $145.95 to $720.67. *See id.* at 70, 72, 74, 76, 78. However, none of the documents attached to the affidavit show the total undiscounted freight charges. *See* Doc. 19-1.

## II.  LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." *Almeira v. GB House, LLC*, No. 8:14-CV-00045-T-27, 2014 WL 1366808, at *1 (M.D. Fla. Apr. 7, 2014). A plaintiff is entitled to only those damages adequately supported by the record. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). "When faced with a motion for default judgment, a court has 'an obligation to assure there is a legitimate basis for any damage award it enters.' " *Pinnacle Towers LLC v. airPowered, LLC*, No. 5:15-CV-

4

81-OC-34PRL, 2015 WL 7351397, at *1 (M.D. Fla. Nov. 20, 2015) (citing *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007)). "[T]he Court must determine the amount and character of damages to be awarded." *Cabrera v. Fla. Express Bus, LLC*, No. 8:13-CV-1850-T-35EAJ, 2015 WL 12844403, at *2 (M.D. Fla. June 23, 2015), *report and recommendation adopted*, No. 8:13-CV-1850-T-35EAJ, 2015 WL 12853103 (M.D. Fla. July 10, 2015).

While an evidentiary hearing may be held to determine appropriate damages, it is not required, particularly where all of the required evidence is of record, *Almeira*, 2014 WL 1366808, at *1, and the plaintiff's claim against the defendant is for a sum certain or for a sum which by computation can be made certain, or if the amount claimed is a liquidated sum or one capable of mathematical calculation, *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). *See also* Fed. R. Civ. P. 55(b). However, default judgement as to damages will not be granted where an affidavit is conclusory and does not sufficiently address the computation of the amount of damage. *Almeira*, 2014 WL 1366808, at *1; *Stevens v. ACR Sales & Serv., Inc.*, No. 608-CV-421-ORL-31KRS, 2008 WL 2275529, at *1 (M.D. Fla. May 31, 2008) (finding affidavit insufficient to establish damages). "Rather than merely telling the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they are from." *FLCM ACQ VIII, LLC v. Taos Ventures, LLC*, No. 5:13-CV-529-OC-PRL, 2015 WL 898560, at *1 (M.D. Fla. Mar. 3, 2015).

### III. DISCUSSION

In this case, Estes Express is seeking damages in the amount of of $1,829,154.14. [Doc. 19-1 ¶ 24]. This amount has not been sufficiently established. The five exemplar freight bills provided as exhibits to the supplemental affidavit do in fact show significant price differences with the forfeited discount added or removed. However, the only explanation of the entries on the

5

exemplar bill provided by Ms. Ferguson in her affidavit is a line item description of the various figures or amounts listed. Specifically, she states

> Each freight bill provides an itemized break down of the charges for the shipment. For example, PRO 048-2019894 is rated as class 125, at 60 pounds for $537.03, plus $15.00 for residential delivery, plus a fuel surcharge of 24.6 percent, and less a discount of $453.03, for a total discounted freight bill of $119.66, and an undiscounted amount of $572.69. See Exhibit C.

*Id.* ¶ 16. There is no explanation as to how the amount of the forfeited discount was determined with reference to the numbers or percentages listed in the Agreement. For instance, this specific freight bill used by Ms. Ferguson as an example is for a shipment from Florida to Oklahoma. *Id.* at 70. The Agreement indicates that for outbound prepaid shipping to or from Oklahoma, there is a 97% discount and an $84.00 minimum charge. *Id.* at 7. From the Court's review of the documentary evidence provided, it is not clear how these rates were used in arriving at the $453.03 discount or the $119.66 total charge. Accordingly, the method used by Estes Express in computing forfeited discounts for each of the 2498 freight bills at issue in this case is unclear. As this Court has stated, rather than merely telling the Court what its damages are, a plaintiff seeking default judgment must show the Court, among other things, how those damages are calculated. *Taos Ventures,* 2015 WL 898560, at *1. Estes Express has not done so here. Asking the Court to take a "judicial leap of faith in fixing the amount of a default judgment is fundamentally incompatible with the bright-line requirement that a plaintiff seeking a default judgment must prove its damages by record evidence." *Phazzer Elecs., Inc. v. Protective Sols., Inc.*, No. 6:15-CV-348-ORL-31DAB, 2015 WL 7184561, at *5 (M.D. Fla. Oct. 27, 2015), *report and recommendation adopted*, No. 6:15-CV3-48-ORL-31DAB, 2015 WL 7076847 (M.D. Fla. Nov. 13, 2015).

Like here, the plaintiff in *Taos Ventures* submitted an affidavit to prove damages in the amount of $327,805.10 under Lease No. 1, and $229,225.24 under Lease No. 2. 2015 WL 898560, at *3. The Master Lease Agreement and supporting Schedules were attached as exhibits. *Id.* This Court found that the plaintiff "ha[d] not laid out precisely how it calculated the total amounts requested" and directed the plaintiff "to identify each basis and a calculation for each sum total of its damages." *Id. See also, e.g.*, *Pinnacle Towers LLC*, 2015 WL 5897524, at *2 ("This Court requires a more precise calculation from Plaintiffs because, of course, this Court has a duty to determine the proper amount of damages, if any are awarded. . . . Plaintiffs shall set forth the total amounts due under each agreement and how Plaintiff calculated those amounts. Also, they shall set forth, for each count, the amounts that Defendant has paid to date, along with the amounts Defendant still owes, and set forth the interest on those amounts still owed along with how Plaintiffs calculated the interest amounts."); *Baumann v. Prober & Raphael*, No. 6:15-CV-1951-ORL-40GJK, 2017 WL 10350673, at *3 (M.D. Fla. May 17, 2017) (noting among other things that plaintiff provided no evidence or any other explanation how his damages were calculated and therefore failed to prove his entitlement to the actual damages sought); *Richo v. Williams*, No. 3:15-CV-0474-HES-MCR, 2016 WL 9488721, at *2 (M.D. Fla. June 23, 2016) (noting that plaintiff had, in the past, provided an affidavit which included a spreadsheet of his missing wages with calculations and based on the Court's correct calculations, a default judgment was entered in the amount of $48,411.00 in damages and liquidated damages); *Volvo Fin. Servs. v. D & D Tractor & Truck Serv., Inc.*, No. 6:15-CV-960-ORL-31KRS, 2015 WL 13740688, at *1 (M.D. Fla. Sept. 15, 2015) (instructing that in its renewed motion for default judgment, plaintiff should describe how damages, including interest, should be calculated). As in those cases, Estes Express' presentation of damages here does not sufficiently demonstrate its entitlement to $1,829,154.14.

7

In contrast, this Court found that the amount of damages was sufficiently established in *Trailer Bridge, Inc. v. Int'l Distribution Servs., LLC*,.. No. 3:10-CV-601-J-37TEM, 2011 WL 7789463, at *3 (M.D. Fla. Nov. 4, 2011), *report and recommendation adopted*, No. 3:10-CV-601-J-37TEM, 2011 WL 7789451 (M.D. Fla. Nov. 28, 2011). In that case, "[a] spreadsheet identifying Defendant's past due invoices and the corresponding amounts outstanding was attached to the amended complaint." *Id.* The plaintiff also "provided the Court with actual copies of all but one of the outstanding invoices for the past due freight and demurrage charges." *Id.* A telephonic hearing directed to the evidence submitted to the Court was conducted. *Id.* The Court determined there was sufficient evidence to calculate the amount of damages owed and further evidentiary hearing was not required. *Id.* Specifically, the Court reasoned that the documents corresponded with the invoice numbers and amounts set forth in the spreadsheet attached to the amended complaint and calculation of the invoice amounts totaled $299,920.07, less an off-set of $55,000, as stated. *Id.*

Estes Express has not remedied the deficiency regarding lost discount charges that the Court identified in its prior orders. *See* Doc. 12 at 4, Doc. 15 at 5-6. Again, there are no line item charges reflecting lost discounts totalling $1,493,578.45, and Estes Express has wholly failed to elucidate how the shipping discounts were calculated and removed. As such, additional explanatory information is needed to prove the lost discount charges. The Court will require an evidentiary hearing[4] at which Estes Express may "endeavor to meet [its] burden of proof" as to damages. *Baumann v. Bank of Am., N.A.*, 734 Fed. Appx. 664, 671 (11th Cir. 2018).

Accordingly, it is **ORDERED:**

---

[4] "In conducting a hearing for default-judgment purposes, a court must preserve any federal statutory right to a jury trial." *Alecca v. AMG Managing Partners, LLC*, No. 3:13-CV-163-J-39PDB, 2014 WL 2987702, at *4 (M.D. Fla. July 2, 2014) (citing Fed. R. Civ. P. 55(b)). Here, however, Estes Express has not made a jury demand.

1. The Amended Motion for Entry of Default Final Judgment [Doc. 19] is hereby DENIED.

2. The amount of damages will be determined at an evidentiary hearing.

3. A telephonic status conference will be scheduled for August 4, 2020 at 11:00 a.m. The purpose of the telephonic status conference is to select a date for the evidentiary hearing.

**DONE AND ORDERED** in Tampa, Florida on July 22, 2020.

Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD AND UNREPRESENTED PARTIES, IF ANY